**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-07-383 |
| | * | |
| RAHSEAN HOLMES | * | |

*******

## MEMORANDUM

Rahsean Holmes is a forty-two-year-old federal prisoner who is serving a 420-month sentence for several offenses arising out of his participation in a conspiracy to rob a drug trafficker. Holmes has served 161 months, nearly forty percent of his sentence. Now pending is Holmes's pro se motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute), based on underlying health conditions that make him particularly susceptible to serious illness related to COVID-19. (ECF 369). The government opposes the motion, (ECF 387), and Holmes has replied (ECFs 396, 397). For the reasons explained below, the motion will be granted and Holmes's sentence will be reduced to time served, followed by an eight-year term of supervised release of which Holmes will serve six months on home confinement.

## BACKGROUND

In 2007 Holmes, along with other co-defendants, was charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); possession with intent to distribute narcotics, in violation of 21 U.S.C. § 841; conspiracy to distribute narcotics, in violation of 18 U.S.C. § 846; violation of the felon in possession of a firearm statute, 18 U.S.C. § 922(g)(1)); and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). (ECF 41, Superseding Indictment). Holmes went to trial on these charges in May 2008 and was convicted on all counts except for a single possession with intent to distribute count. (ECF 124, Jury Verdict). The evidence

1

at trial showed that Holmes concocted a plan to commit several home invasion robberies, and recruited others to that plan. Working with a cooperating witness, investigators led Holmes to believe he had an opportunity to rob a fellow drug dealer at a Quality Inn Hotel where the dealer was purportedly storing multiple kilograms of cocaine. The dealer did not exist, but the story was devised to arrest Holmes and others in a safe manner, without endangering others. Holmes indicated a willingness to kidnap and kill the would-be victim in order to obtain the drugs and any drug proceeds. On August 15, 2007, Holmes, along with two co-conspirators, arrived at the hotel in a vehicle for the purpose of carrying out the robbery. At that time, members of the Baltimore police SWAT team approached Holmes's vehicle, and Holmes fled in the vehicle. A high-speed chase ensued, which resulted in damage to at least two law enforcement vehicles. During the chase, a co-defendant bailed from the vehicle in order to rid himself of a couple of firearms in a nearby backyard. (ECF 150, Sentencing Tr. at 28–29).

At sentencing, Holmes was subject to an enhanced sentence under 21 U.S.C. § 851, which meant that he was subject to a ten-year mandatory minimum sentence on the conspiracy to distribute narcotics count in addition to the consecutive-five-year mandatory minimum sentence he faced for his possession of a firearm during a crime of violence. (*Id.* at 13–14). Holmes was also deemed a career offender because of two prior convictions for state felony drug offenses. (*Id.* at 10–11). That designation raised his guideline sentence to 420 months to life. (*Id.* at 14). After considering the sentencing factors under 18 U.S.C. § 3553(a), the court sentenced Holmes to a total of 420 months in custody. (*Id.* at 30).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before

2

the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).[1]

On July 15, 2020, Holmes filed an administrative request for compassionate release with the warden of USP Lewisburg, where he is currently incarcerated. (*See* ECF 369-1). That request was denied in September 2020. (*See id.*). The government does not contest that Holmes's motion is properly before the court or that there are "extraordinary and compelling reasons" to reduce Holmes's sentence.

Holmes has hypertension (i.e., high blood pressure) and asthma, and his BMI has fluctuated over the past several years between a level that categorizes him as obese and one that categorizes him as overweight. (ECF 387-1 at 7; ECF 397-1 at 1–2). The CDC has warned that individuals with

---

[1] Under 28 U.S.C. § 994(t), the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

3

obesity "are at increased risk of severe illness" from COVID-19, that individuals with hypertension, asthma, or who are overweight "might be at an increased risk for severe illness" from COVID-19, and that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Mar. 15, 2021). Further compounding the risk to Holmes is the mere fact of his incarceration, *see, e.g.*, *Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."). The court agrees with the parties that Holmes's risk of severe illness from COVID-19 is an "extraordinary and compelling reason" to consider him for a reduction in sentence. Thus, the only issue is whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

The government opposes Holmes's release under the § 3553(a) factors on the basis that the seriousness of his offense shows that continued incarceration is necessary to protect the public from further crimes by Holmes, to afford adequate deterrence to criminal conduct, and to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.

The court first considers the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a). Holmes's offense was very serious. The evidence at trial showed that Holmes was the primary orchestrator of a dangerous scheme to rob a person he and his co-conspirators believed to have significant drug proceeds, that he was prepared to engage in violence, and that the group was armed. In addition, Holmes's flight from law enforcement in a motor vehicle demonstrated a serious degree of recklessness as to public safety. This conduct was dangerous and warranted a significant sentence.

Without minimizing the offense, the court notes that it is Holmes's only conviction involving violent conduct. His criminal record includes two convictions for possession with intent to distribute a controlled substance and a conviction for bond jumping. (ECF 393, Presentence Report ¶¶ 48–55). All of these convictions are nearly, if not more than, twenty years old and occurred in Holmes's young adulthood. The court considers Holmes's history alongside his post-sentencing conduct, which "provides the most up-to-date-picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).

Holmes's post-sentencing conduct can only be described as remarkable. He has demonstrated a clear commitment to his education and his mental well-being, and the well-being of those in his community in the BOP. During his incarceration, Holmes obtained an Associate's degree in psychology from Ashworth College. He graduated with honors, and his GPA qualified him to become a member of a National Honor Society for distance learners. (ECF 369-8 at 1–3). In addition to that accomplishment, Holmes has participated extensively in the BOP's own psychological services, including programs in grief and loss, victim impact and critical thinking, emotional self-regulation, and drug education. (*Id.* at 6). While incarcerated at FCI Estill, he completed beginner, advanced, and facilitator workshops for an Alternatives to Violence Project ("AVP"). (ECF 369-8 at 4–5). AVP is a violence reduction, restorative justice, and trauma treatment program. (ECF 369-6). With a group of inmates, Holmes was part of a "think tank" that hoped to demonstrate that the program could be used more broadly at the BOP. Their work lead to the approval of the AVP program for use at FCI Estill, and Holmes received a Presidential Volunteer Service Award for his efforts. (ECF 369 at 5, 10-11). Before programming was limited due to the COVID-19 pandemic, Holmes was on track to serve as a facilitator of the AVP program himself for its beginner workshop. (*Id.* at 11).

Holmes has also been a member of Lewisburg's Psychology Services Suicide Watch Companion Team for over two years. With his motion, Holmes submitted a letter from USP

5

Lewisburg's chief psychologist describing the program. The letter states that the watch team is a group of inmates who have volunteered their time to supervise fellow inmates on suicide watch and to respond to "potentially life-threatening emergencies." (ECF 369-5). "Participation on the team requires demonstration of superior institutional adjustment determined through a screening process by both unit team and custody staff. Following this initial screening, applicants are interviewed by the Chief Psychologist and the final selections are based upon the demonstration of maturity, responsibility and commitment to the well-being of fellow inmates." (*Id.*). Holmes's work with the Suicide Watch Team is in addition to a regular work assignment. His last disciplinary incident was in 2010, more than ten years ago, and was one of only two disciplinary infractions during his more than thirteen years of incarceration. (ECF 387-4).

In summary, Holmes's truly unusual post-sentencing accomplishments and his sincere reflections in his motion on his offenses and the troubling attitudes he held when he committed them demonstrate that he understands the seriousness of his actions, is unlikely to reoffend, and is ready to re-enter the community. Considering also the lengthy period of supervised release (eight years) that still remains, the court thus finds that further incarceration is not necessary to protect the public from further crime and is sufficient to afford adequate deterrence. 18 U.S.C. §§ 3553(a)(2)(B), (C).

The court also considers the applicable guideline sentence, *id.* § 3553(a)(4); and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6). The length of Holmes's sentence was driven in part by a finding that he was a career offender. If Holmes were sentenced today, he would likely not receive that designation, as the conspiracy to distribute a controlled substance offense relied on in the Presentence Report as the predicate offense for his career offender status (ECF 393 ¶ 42) no longer qualifies as a "controlled substance offense," *see United States v. Norman*, 935 F.3d 232, 239 (4th Cir. 2019) (holding that a conviction for conspiracy to distribute narcotics under 21 U.S.C. § 846 does

6

not qualify as a "controlled substance offense" under the Guidelines).[2] Without the career offender designation, Holmes's guideline sentence would have been significantly lower. The court considers this "changed landscape when considering the goals of sentencing." *United States v. Lee*, No. DKC 12-0493, 2020 WL 4053352, *4 (D. Md. Jul. 20, 2020); *see also United States v. Kess*, No. ELH-14-480, 2020 WL 3268093, *8 (D. Md. Jun. 17, 2020).

In light of this significantly changed landscape and Holmes's rehabilitation, the court finds that a sentence of time served, with the required eight year period of supervised release and the additional condition that Holmes will serve the first six months of supervised release on home confinement, adequately reflects the seriousness of the offense, promotes respect for the law, and provides for just punishment. 18 U.S.C. § 3553(a)(2)(A).

Holmes also appears to have maintained significant community support. A friend, an aunt, and an uncle have written in support of his release, and he intends to live with his mother upon his release. (ECF 369 at 8). While it is unclear whether this plan has been approved by U.S. Probation, it appears that his mother has space to accommodate Holmes and Holmes indicates that his mother has received a COVID-19 vaccine. The court notes that Holmes states he does not intend to receive a COVID-19 vaccine if he is released because of a dairy allergy. (ECF 396 at 3). He references news reports from early vaccination efforts in Europe that people with allergies should not take the vaccine. (*Id.*). The court does not believe Holmes's choice to remain unvaccinated minimizes the merits of his motion for compassionate release, but notes that the CDC "recommends that people get vaccinated even if they have a history of severe allergic reactions not related to vaccines or injectable medications—such as food[.]" *Information about COVID-19 Vaccines for People with Allergies*,

---

[2] Whether Holmes's conviction under 18 U.S.C. 924(c) can stand following *Johnson v. United States*, 135 S. Ct. 2551 (2015), *Simms*, and *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2019) is the subject of Holmes's separate motion to vacate under 28 U.S.C. § 2255 (ECF 314) and is not addressed here. That motion continues to be held in abeyance. (ECF 359).

CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/specific-groups/allergies.html (updated Mar. 4, 2021). Vaccination sites have also been advised to take safety precautions to prepare for the possibility of severe allergic reactions to the vaccine. People are to be monitored for at least fifteen minutes after they get a vaccine and vaccination providers are to have appropriate medications and equipment to manage an allergic reaction available should one occur. *What to Do if You Have an Allergic Reaction After Getting a COVID-19 Vaccine*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/allergic-reaction.html (updated Mar. 4, 2021). The court encourages Holmes, out of concern for his health, to consult with a doctor once he is released to discuss the benefits and potential risks of receiving a COVID-19 vaccine.

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Holmes's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). This, combined with the "extraordinary and compelling" risk to Holmes of severe illness from COVID-19 should he remain in prison, leads the court to conclude that Holmes is entitled to compassionate release.

## CONCLUSION

For the foregoing reasons, Holmes's motion for compassionate release (ECF 369) will be granted and his sentence will be reduced to time served. The associated motions to seal (ECFs 386, 392) will be granted to protect the confidentiality of personal medical information. Holmes's motion to amend and supplement his reply will also be granted (ECF 397).

The terms and conditions of supervised release to which Holmes was sentenced will remain in place, with the additional condition that Holmes will spend the first six months of supervised release on home confinement, to be monitored by U.S. Probation, using location monitoring technology at the discretion of the Probation Officer. For the six-month home confinement period,

Holmes shall not leave the address approved by U.S. Probation except for activities approved in advance by U.S. Probation. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows, which will be stayed for up to fourteen days to make appropriate travel arrangements and to ensure Holmes's safe release, including by placing Holmes in quarantine for a period of fourteen days and to evaluate him for the purposes of receiving a medical clearance. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the United States shall immediately notify the court and show cause why the stay should be extended.

  3/22/21                                                                                       /S/
Date                                                                                           Catherine C. Blake
                                                                                                  United States District Judge